UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____ - Civ - _____

FILED by _R̲G̲S̲_ D.C.

SEP 01 2009

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. FLA. MIAMI

COLONY INSURANCE COMPANY,                    CASE NO.

          Plaintiff,

vs.                                          # 09-61379

WINNIE I. NEUBAUER; OCEAN MEDICAL
CENTER, LLC; OCEAN; HYPERBARIC              CIV - COOKE
NEUROLOGIC CENTER, INC.; ANGELA
RUSCIO, AS PERSONAL REPRESENTATIVE
OF THE ESTATE OF VINCENZA PESCE; AND        MAGISTRATE
LUIGI MARTINISI, AS PERSONAL                BANDSTRA
REPRESENTATIVE OF THE ESTATE OF
FRANCESCO PIO MARTINISI,

          Defendants.
_____/

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Colony Insurance Company, for its amended complaint for declaratory judgment

pursuant to 28 U.S.C. §2201(a) against Defendants Winnie I. Neubauer, Ocean Medical Center,

LLC, Ocean Hyperbaric Neurologic Center, Inc., Angela Ruscio, As Personal Representative of

the Estate of Vincenza Pesce, and Luigi Martinisi, As Personal Representative of the Estate of

Francesco Pio Martinisi, states:

### Jurisdiction and Venue

1.      Plaintiff Colony Insurance Company ("Colony") is a corporation organized and

existing under the laws of the state of Virginia with its principal place of business in Richmond,

Virginia.  Colony is a citizen of the state of Virginia.

2.      Defendant Winnie I. Neubauer is a citizen of the State of Florida, and is *sui juris*

in all respects.

3.      Defendant Ocean Medical Center, LLC is a limited liability company organized under the laws of Florida with its principal place of business in Broward County, Florida. Winnie I. Neubauer, who is a member of Defendant Ocean Medical Center, LLC, is a citizen of Florida.  Upon information and belief, no member of Defendant Ocean Medical Center, LLC is a citizen of the state of Virginia, and Defendant Ocean Medical Center, LLC is a citizen of the state of Florida.

4.      Defendant Ocean Hyperbaric Neurologic Center, Inc. is a corporation organized under the laws of Florida with its principal place of business in Broward County, Florida. Defendant Ocean Hyperbaric Neurologic Center, Inc. is a citizen of the state of Florida.

5.      Defendant Angela Ruscio, As Personal Representative of the Estate of Vincenza Pesce is a natural person, the appointed personal representative of the estate of Vincenza Pesce, and, upon belief, a citizen of Italy.

6.      Defendant Luigi Martinisi, As Personal Representative of the Estate of Francesco Pio Martinisi is a natural person, the appointed personal representative of the estate of Vincenza Pesce and, upon belief, a citizen of Italy.

7.      This Court has jurisdiction pursuant to 28 U.S.C. §1332 because this action is between citizens of different states, including citizens or subjects of a foreign state, and the amount in controversy exceeds the value of $75,000, exclusive of interests and costs.

8.      Venue is proper under 28 U.S.C. §1391(a) and (c).

### The Underlying Lawsuits

9.      Currently pending in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida is an action commenced on or about July 1, 2009 by Angela Ruscio, As Personal Representative of the Estate of Vincenza Pesce against Ocean Hyperbaric

Neurologic Center, Inc. and Ocean Medical Center, LLC bearing case No. 09036731 (the "Ruscio Lawsuit"). A copy of the complaint in the Ruscio Lawsuit is attached as Exhibit A.

10.    Also currently pending in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida is an action commenced on or about July 1, 2009 by Luigi Martinisi, As Personal Representative of the Estate of Francesco Pio Martinisi against Ocean Hyperbaric Neurologic Center, Inc. and Ocean Medical Center, LLC bearing case No. 09036736 (the "Martinisi Lawsuit"). A copy of the complaint in the Martinisi Lawsuit is attached as Exhibit B.

11.    The personal representatives in both the Ruscio Lawsuit and the Martinisi Lawsuit seek damages pursuant to the Florida Wrongful Death Act.

12.    Both the Ruscio Lawsuit and the Martinisi Lawsuit arise from a fire and explosion that occurred in a hyperbaric oxygen chamber on May 1, 2009 while Martinisi's decedent, Francesco Pio Martinisi, was receiving hyperbaric oxygen treatment and Ruscio's decedent, Vincenza Pesce, was keeping him – her grandson – company, in the hyperbaric chamber.

13.    The Complaints in the Ruscio Lawsuit and the Martinisi Lawsuit each allege the hyperbaric chamber in which the fire and explosion occurred was located in the premises of Ocean Hyperbaric Neurologic Center, Inc., which are located in a building owned by Ocean Medical Center, LLC.

### The Colony Policy Insuring Agreement

14.    Colony issued a policy of insurance to Defendant Winnie I. Neubauer D/B/A Ocean Medical Center, LLC, Policy No. GL 3717238 (the "Policy"), in Florida, affording certain liability coverage subject to the terms, conditions, limitations and exclusions in the Policy. A copy of the Policy and endorsements is attached as Exhibit C, Bates stamped CIC 000001 to CIC 000043.

15.    The insuring obligation under the bodily injury and property damage portion of the Policy provides the following:

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.    **Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  . . .

Policy at CIC 000025.

### Colony Defends Under Reservation of Rights

16.    Ocean Medical Center, LLC has demanded a defense and indemnification under the Policy from Colony with respect to the claims made in the Ruscio Lawsuit and the Martinisi Lawsuit.

17.    Colony reserved its right to deny coverage to Ocean Medical Center, LLC and is providing a defense to Ocean Medical Center, LLC in the Ruscio Lawsuit and the Martinisi Lawsuit pursuant to such reservation of rights.

18.    Under the Policy exclusions set forth below, coverage would not be afforded for the claims made in the Ruscio Lawsuit and the Martinisi Lawsuit.

19.    It is Colony's position that the Defendants are not entitled to insurance coverage under the Policy.  Nevertheless, Colony is in need of and entitled to a declaration of rights regarding same.

20.    There exists a bona fide, actual and present dispute between the parties.

4

21.     Colony is in need of judicial interpretation or construction of the Policy as related to the claims made in the Ruscio Lawsuit and in the Martinisi Lawsuit, and the facts surrounding and pertinent to the allegations contained therein.

22.     Colony is without an adequate remedy at law except by this Court's declaratory judgment declaring Colony's rights under the Policy.

### Count I – Exclusion – Services Furnished By Healthcare Providers

23.     Plaintiff realleges paragraphs 1 through 22 of this Complaint as if each were fully set forth here.

24.     The following exclusion is included in the Policy:

### EXCLUSION -- SERVICES FURNISHED BY HEALTHCARE PROVIDERS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I - Coverage B – Personal And Advertising Injury Liability:**

With respect to any operation shown in the Schedule, this insurance does not apply to 'bodily injury', 'property damage' or 'personal and advertising injury' arising out of :

1. The rendering or failure to render:

**a**. Medical, surgical, dental, x-ray, or nursing service, treatment, advice or instruction, or the related furnishing of food or beverages;

**b**. Any health or therapeutic service, treatment, advice or instruction; or

**c**. Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement of personal grooming.

5

**2.**  The furnishing or dispensing of drugs or medical, dental, or surgical supplies or appliances; or

**3.**  The handling or treatment of dead bodies, including autopsies, organ donation or other procedures.

Policy at CIC 000042.

25.     The deaths sued upon in the Ruscio Lawsuit and in the Martinisi Lawsuit arose out of the rendering or failure to render medical, surgical, health or therapeutic service, treatment, advice or instruction.

26.     Therefore the foregoing exclusion for services provided by healthcare providers operates to bar coverage under the Policy, and Colony has no obligations to Ocean Medical Center, LLC in connection with the Ruscio Lawsuit and the Martinisi Lawsuit.

### Count II – Exclusion – Services Furnished By Healthcare Providers

27.     Plaintiff realleges paragraphs 1 through 22 of this Complaint as if each were fully set forth here.

28.     The following exclusion is included in the Policy:

**EXCLUSION – PROFESSIONAL SERVICES**

This insurance does not apply to 'bodily injury'. . . arising out of or resulting from the rendering or failure to render any 'professional service' except by endorsement to this policy and then only to the extent of such endorsement.

'Professional Service' means:

      *                *                *

**(4)**  Medical, surgical, dental, x-ray or nursing services, treatment, advice or instructions;

      *                *                *

**(5)** Any health or therapeutic service, treatment, advice, or instruction; . . .

Policy at CIC 000014.

6

29.     The deaths sued upon in the Ruscio Lawsuit and in the Martinisi Lawsuit arose out of or resulted from the rendering or failure to render professional service.

30.     Therefore the foregoing exclusion for professional services operates to bar coverage under the Policy, and Colony has no obligations to Ocean Medical Center, LLC in connection with the Ruscio Lawsuit and the Martinisi Lawsuit.

## Count III – Hazardous Materials Exclusion

31.     Plaintiff realleges paragraphs 1 through 22 of this Complaint as if each were fully set forth here.

32.     The following exclusion is included in the Policy:

### HAZARDOUS MATERIALS EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.  **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, f, and SECTION I - COVERAGES, COVERAGE B PERSONAL AND ADVERTIZING INJURY LIABILITY, 2. Exclusions, n.** and **m.** are replaced by the following:

This insurance does not apply to:

**Hazardous Materials:**

**(1)** 'Bodily injury' or 'property damage' or 'personal and advertising injury' which would not have occurred, in whole or in part, but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'hazardous materials' at any time

<center>*          *          *</center>

This exclusion applies whether or not such 'hazardous material(s)'; has any function in your business, operations, premises, site or location.

<center>7</center>

**B. SECTION V – DEFINITIONS** is amended and the following is added:

'Hazardous materials' means 'pollutants', lead, asbestos, silica and materials containing them.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Policy at CIC 000013.

33.     Under the Policy, "'Pollutants' mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemical and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

34.     The deaths sued upon in the Ruscio Lawsuit and in the Martinisi Lawsuit would not have occurred, in whole or in part, but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "hazardous materials."

35.     Therefore the foregoing exclusion for hazardous materials operates to bar coverage under the Policy, and Colony has no obligations to Ocean Medical Center, LLC in connection with the Ruscio Lawsuit and the Martinisi Lawsuit.

<u>**Count IV – Limitation of Coverage to Business Description**</u>

36.     Plaintiff realleges paragraphs 1 through 22 of this Complaint as if each were fully set forth here.

37.     The following endorsement limits the Policy's coverage:

**LIMITATION OF COVERAGE TO BUSINESS DESCRIPTION**

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY COVERAGE PART

**SCHEDULE**

BUSINESS DESCRIPTION:  MEDICAL OFFICE BUILDING

8

A. **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 1. Insuring agreement, b**. is amended and the following is added:

(4) The "bodily injury" or "property damage" is caused or results from the business described in the Schedule . . .

38.     The deaths sued upon in the Ruscio Lawsuit and in the Martinisi Lawsuit were not caused, or did not result from, the business of a medical office building.

39.     Therefore the foregoing limitation of coverage to business description operates to bar coverage under the Policy, and Colony has no obligations to Ocean Medical Center, LLC in connection with the Ruscio Lawsuit and the Martinisi Lawsuit.

### Count IV – Alternate Claim; Only One Occurrence

40.     Plaintiff realleges paragraphs 1 through 22 of this Complaint as if each were fully set forth here.

41.     Alternatively, should the Court conclude there is coverage under the Policy, the Policy provides limits of liability of $1,000,000 per occurrence and a general aggregate limit of $2,000,000.

42.     The claims in the Ruscio Lawsuit and in the Martinisi Lawsuit arose from a single occurrence.

43.     Therefore, in the event the Court concludes there is coverage under the Policy, the single limit of $1,000,000 is the only coverage available as a result of the fire and explosion sued upon in the Ruscio Lawsuit and the Martinisi Lawsuit.

### Prayer for Relief

WHEREFORE, Plaintiff Colony Insurance Company requests this Court to assume jurisdiction of this case and issue a judgment declaring (1) that there is no insurance coverage afforded by Colony under the Policy for the claims in the Ruscio Lawsuit and the Martinisi

Lawsuit and (2) that Colony has no duty to defend or indemnify Ocean Medical Center, LLC.. in

the Ruscio Lawsuit and the Martinisi Lawsuit or, alternatively, should the Court determine there

is coverage under the Policy, (3) that only the single limit of $1,000,000 is applicable.  And,

Colony further requests this Court enter an award for the costs incurred in this action.


DATED this 1st day of September 2009.


Joshua D. Lerner
Florida Bar No. 0455067
RUMBERGER, KIRK & CALDWELL
Brickell Bayview Centre, Suite 3000
80 S.W. 8th Street
Miami, Florida  33130-3037
Telephone:  (305) 358-5577
Telecopier:  (305) 371-7580
jlerner@rumberger.com

Attorneys for Plaintiff

884141

# EXHIBIT A

Fax sent by : 9547760670          OCEAN HYPERBARIC          07-02-09 11:08   Pg: 2/35

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

**03**

CASE NO.

ANGELA RUSCIO, As Personal
Representative of the Estate of
VINCENZA PESCE, deceased,

**09 03 6 7 3 1**

    Plaintiff,

vs.

OCEAN HYPERBARIC NEUROLOGIC
CENTER, INC., and OCEAN MEDICAL
CENTER, L.L.C.,

    Defendants.

_____/

A TRUE COPY
JUL 01 2009
HOWARD C. FORMAN
CLERK OF CIRCUIT COURT
BROWARD COUNTY, FL

## C O M P L A I N T

    COMES NOW, the Plaintiff, ANGELA RUSCIO, as Personal Representative of the

Estate of VINCENZA PESCE, by and through her undersigned counsel, and sues the

Defendant, OCEAN HYPERBARIC NEUROLOGIC CENTER, INC., and OCEAN

MEDICAL CENTER, L.L.C., as follows:

### GENERAL ALLEGATIONS AS TO ALL COUNTS

    1.    This is an action for damages that exceed Fifteen Thousand ($15,000.00) Dollars,

exclusive of interest and costs..

    2.    At all times material hereto, the Plaintiff, ANGELA RUSCIO, is the lawful Personal

Representative of the Estate of the deceased, VINCENZA PESCE, and is a resident of Italy. A

copy of the Letters of Administration is attached hereto as Exhibit "A."

    3.    This is an action for Wrongful Death that is brought pursuant to the Florida Wrongful

Death Act, as codified in Section 768.16 through 768.26, Florida Statutes.

4.   The survivors/potential beneficiaries of **THE ESTATE OF VINCENZA PESCE**, as defined by Florida Wrongful Death Act, are:

        a)        Patrizia Savino, natural daughter,  age 41
        b)        Caterina Ruscio, natural daughter, age 32
        c)        Tiziana Ruscio, natural daughter, age 31
        d)        Angela Ruscio, natural daughter; age 22

5.    At all times material hereto and at the time of the incident complained of, Defendant, **OCEAN MEDICAL CENTER, L.L.C.**, was a Florida Limited Liability Company doing business in Broward County, Florida, and was the owner that certain building located at 4001 North Ocean Drive, Lauderdale By the Sea, Broward County, Florida.

6.    At all times material hereto and at the time of the incident complained of, Defendant, **OCEAN HYPERBARIC NEUROLOGIC CENTER, INC.**, was a Florida Profit Corporation doing business at 4001 North Ocean Drive, Suite 105,  Lauderdale By the Sea, Broward County, Florida.

7.    At all times material hereto and at the time of the incident complained of, Defendant **OCEAN HYPERBARIC NEUROLOGIC CENTER, INC.**, was in the business of providing hyperbaric oxygen treatments to its patients. Hyperbaric oxygen treatments involve the administration of pure oxygen while in a compressed pressurized environment, which is highly flammable and has explosive qualities that can cause violent fires and explosions. As such, Defendant **OCEAN HYPERBARIC NEUROLOGIC CENTER, INC.** was engaged in a ultrahazardous activity.

8.    At all times material hereto and at the time of the incident complained of, Defendant, **OCEAN MEDICAL CENTER, L.L.C.**, was fully aware that Defendant **OCEAN**

2

HYPERBARIC NEUROLOGIC CENTER, INC., was engaged in the aforedescribed ultrahazardous activity.

9.     On May 1, 2009, Plaintiff's decedent, VINCENZA PESCE was a business invitee who was lawfully in a hyperbaric chamber during a hyperbaric oxygen treatment being given to her Grandson, Francesco Pio Martinisi, on the premises of Defendant, OCEAN HYPERBARIC NEUROLOGIC CENTER, INC,, in the building that was owned and operated by Defendant OCEAN MEDICAL CENTER, L.L.C.,.

10.    At the aforedescribed time, place and date, Plaintiffs decedent, VINCENZA PESCE, was seriously and severely injured in an explosion and fire that occurred in said hyperbaric chamber. As a direct and proximate result of said explosion and fire, Plaintiffs' decedent was severely burned and ultimately died from said injuries.

### COUNT I
### NEGLIGENCE OF OCEAN HYPERBARIC NEUROLOGIC CENTER, INC

Plaintiff, ANGELA RUSCIO, realleges and reavers paragraph numbers 1 through 10, as though fully set forth herein and further states:

11.    The Defendant, OCEAN HYPERBARIC NEUROLOGIC CENTER, INC, by and through its agents and employees, owed a duty to the Plaintiff's decedent to maintain the aforedescribed premises in a reasonably safe condition, and to use reasonable care for her safety.

12.    At the aforedescribed place and date, the Defendant, OCEAN HYPERBARIC NEUROLOGIC CENTER, INC, by and through its agents and employees, did negligently and carelessly own, operate, maintain and control the aforesaid premises, including but not limited to the hyperbaric chamber, in a negligent and careless manner, in one or more of the following ways:

3

a) by failing to take reasonable safety measures were taken to protect against explosion and/or fire in its hyperbaric oxygen chambers, although Defendant knew or in the exercise of reasonable care should have known that the administration of pure oxygen while a pressurized environment is highly explosive and dangerous

b) by failing to adequately warn or instruct patients and other invitees in and around its hyperbaric oxygen chambers, including but not limited to Plaintiff's decedent, concerning safety practices and procedures designed to minimize or eliminate the risk of fire and/or explosion;

c) by failing to adequately supervise the aforedescribed hyperbaric chambers, their occupants and the areas surrounding said chambers;

d) by failing to properly inspect and maintain the hyperbaric chambers in the aforedescribed facility, and the areas surrounding the chambers, in order to insure that said chambers were working properly and to minimize the risk of ignition sources that could lead to explosion and/or fire in and around said chambers, thereby creating a dangerous and hazardous condition.

e) by failing to provide adequate warnings and/or other reasonable notice of the aforedescribed unsafe, dangerous and hazardous condition to patrons, including but not limited to the Plaintiff's decedent, although Defendant knew, or in the exercise of reasonable care, should have known about the existence of said condition, and it further represented that its premises were safe and suitable when, in fact, it was not because of the hazardous condition.

13. As a direct and proximate result of the aforementioned negligence on the part of Defendant, OCEAN HYPERBARIC NEUROLOGIC CENTER, INC., Decedent, VINCENZA PESCE, sustained grievous injuries resulting in her death and the Plaintiff has sustained the following damages for the Estate and the survivors:

a. loss of prospective net accumulations of the estate reduced to present value and loss of support and services pursuant to Florida Statutes 768 (past and present);

b. medical and funeral expenses due to the Decedent's injuries and death;

4

c. the future loss of support and services of the Decedent, to her children, PATRIZIA SAVINO, CATERINA RUSCIO,  TIZIANA RUSCIO, and ANGELA RUSCIO, from the date of death and reduced to present value;

d. the loss by PATRIZIA SAVINO, CATERINA RUSCIO,  TIZIANA RUSCIO, and ANGELA RUSCIO of parental companionship, instruction and guidance and their mental pain and suffering as a result of their mother's death.

WHEREFORE, the Plaintiff, ANGELA RUSCIO, as Personal Representative of the Estate of VINCENZA PESCE hereby demands judgment against the Defendant, OCEAN HYPERBARIC NEUROLOGIC CENTER, INC., in an amount in excess of FIFTEEN THOUSAND DOLLARS ($15,000.00), along with costs and interest where allowed by law.

## COUNT II
## NEGLIGENCE OF OCEAN MEDICAL CENTER, L.L.C.

Plaintiff, ANGELA RUSCIO, realleges and reavers paragraph numbers 1 through 10, as though fully set forth herein and further states:

14. The Defendant,  OCEAN MEDICAL CENTER, LLC., by and through its agents and employees, had a non-delegable duty to invitees on its premises, including but not limited to Plaintiff's decedent,  to assure that its premises, including but not limited to the part of its premises occupied by OCEAN HYPERBARIC NEUROLOGIC CENTER, INC, were in reasonably safe condition, and to use reasonable care for their safety.

15. At the aforedescribed place and date, Defendant OCEAN MEDICAL CENTER, LLC.,, by and through its agents and  employees, did negligently and carelessly own, operate, maintain and control its aforedescribed premises, including but not limited to the hyperbaric chambers at OCEAN HYPERBARIC NEUROLOGIC CENTER, INC., in a negligent and careless manner, in one or more of the following ways:

5

a)  by failing to take reasonable safety measures were taken to protect against explosion and/or fire in its hyperbaric oxygen chambers, although Defendant knew or in the exercise of reasonable care should have known that the administration of pure oxygen while a pressurized environment is highly explosive and dangerous

b)  by failing to adequately warn or instruct patients and other invitees in and around its hyperbaric oxygen chambers, including but not limited to Plaintiff's decedent, concerning safety practices and procedures designed to minimize or eliminate the risk of fire and/or explosion;

c)  by failing to adequately supervise the aforedescribed hyperbaric chambers, their occupants and the areas surrounding said chambers;

d)  by failing to properly inspect and maintain the hyperbaric chambers in the aforedescribed facility, and the areas surrounding the chambers, in order to insure that said chambers were working properly and to minimize the risk of ignition sources that could lead to explosion and/or fire in and around said chambers, thereby creating a dangerous and hazardous condition.

e)  by failing to provide adequate warnings and/or other reasonable notice of the aforedescribed unsafe, dangerous and hazardous condition to patrons, including but not limited to the Plaintiff's decedent, although Defendant knew, or in the exercise of reasonable care, should have known about the existence of said condition, and it further represented that its premises were safe and suitable when, in fact, it was not because of the hazardous condition.

16.   As a direct and proximate result of the aforementioned negligence on the part of Defendant, OCEAN MEDICAL CENTER, LLC., Plaintiff's decedent, VINCENZA PESCE, sustained grievous injuries resulting in her death and the Plaintiff has sustained the following damages for the Estate and the survivors:

a.  loss of prospective net accumulations of the estate reduced to present value and loss of support and services pursuant to Florida Statutes 768 (past and present);

b.  medical and funeral expenses due to the Decedent's injuries and death;

6

c. the future loss of support and services of the Decedent, to her children, PATRIZIA SAVINO, CATERINA RUSCIO, TIZIANA RUSCIO, AND ANGELA RUSCIO, from the date of death and reduced to present value;

d. the loss by PATRIZIA SAVINO, CATERINA RUSCIO, TIZIANA RUSCIO, AND ANGELA RUSCIO of parental companionship, instruction and guidance and their mental pain and suffering as a result of their mother's death.

WHEREFORE, the Plaintiff, ANGELA RUSCIO, as Personal Representative of the Estate of VINCENZA PESCE hereby demands judgment against the Defendant, OCEAN HYPERBARIC NEUROLOGIC CENTER, INC., in an amount in excess of FIFTEEN THOUSAND DOLLARS ($15,000.00), along with costs and interest where allowed by law.

## COUNT III
## STRICT LIABILITY OF
## OCEAN HYPERBARIC NEUROLOGIC CENTER, INC.

Plaintiff, ANGELA RUSCIO, realleges and reavers paragraph numbers 1 through 10, as though fully set forth herein and further states:

17.    By administering pure oxygen in a pressurized environment, Defendant, OCEAN HYPERBARIC NEUROLOGIC CENTER, INC, was engaged in a ultrahazardous activity for which it is strictly liable.

18.    As a direct and proximate result of the aforedescribed ultrahazardous activities, Plaintiff's Decedent, VINCENZA PESCE, sustained grievous injuries resulting in her death and the Plaintiff has sustained the following damages for the Estate and the survivors:

a. loss of prospective net accumulations of the estate reduced to present value and loss of support and services pursuant to Florida Statutes 768 (past and present);

b. medical and funeral expenses due to the Decedent's injuries and death;

c. the future loss of support and services of the Decedent, to her children, PATRIZIA SAVINO, CATERINA RUSCIO, TIZIANA RUSCIO,

7

and ANGELA RUSCIO, from the date of death and reduced to present value;

d. the loss by PATRIZIA SAVINO, CATERINA RUSCIO, TIZIANA RUSCIO, and ANGELA RUSCIO of parental companionship, instruction and guidance and their mental pain and suffering as a result of their mother's death.

WHEREFORE, the Plaintiff, ANGELA RUSCIO, as Personal Representative of the Estate of VINCENZA PESCE hereby demands judgment against the Defendant, OCEAN HYPERBARIC NEUROLOGIC CENTER, INC., in an amount in excess of FIFTEEN THOUSAND DOLLARS ($15,000.00), along with costs and interest where allowed by law.

## COUNT IV
## STRICT LIABILITY OF
## OCEAN MEDICAL CENTER, LLC

Plaintiff, ANGELA RUSCIO, realleges and reavers paragraph numbers 1 through 10, as though fully set forth herein and further states:

19.    OCEAN MEDICAL CENTER, LLC., is strictly liable for the aforedescribed ultrahazardous activity that was being conducted on its property.

20.    As a direct and proximate result of the aforedescribed ultrahazardous activities, Plaintiff's Decedent, VINCENZA PESCE, sustained grievous injuries resulting in her death and the Plaintiff has sustained the following damages for the Estate and the survivors:

a. loss of prospective net accumulations of the estate reduced to present value and loss of support and services pursuant to Florida Statutes 768 (past and present);

b. medical and funeral expenses due to the Decedent's injuries and death;

c. the future loss of support and services of the Decedent, to her children, PATRIZIA SAVINO, CATERINA RUSCIO, TIZIANA RUSCIO, and ANGELA RUSCIO, from the date of death and reduced to present value;

d. the loss by PATRIZIA SAVINO, CATERINA RUSCIO, TIZIANA RUSCIO, and ANGELA RUSCIO of parental companionship, instruction and guidance

and their mental pain and suffering as a result of their mother's death.

WHEREFORE, the Plaintiff, ANGELA RUSCIO, as Personal Representative of the Estate of VINCENZA PESCE hereby demands judgment against the Defendant, OCEAN MEDICAL CENTER LLC, in an amount in excess of FIFTEEN THOUSAND DOLLARS ($15,000.00), along with costs and interest where allowed by law.

## DEMAND FOR JURY TRIAL

The Plaintiff, ANGELA RUSCIO, as Personal Representative of the Estate of VINCENZA PESCE, demands a trial by jury of all issues triable by law.

DATED this 1st day of July, 2009.

ROTHSTEIN ROSENFELDT ADLER
Attorneys for Plaintiff
401 East Las Olas Blvd., Suite 1650
Fort Lauderdale, Florida 33301
Tel: (954) 522-3456; Fax: (954) 527-8663
radler@rra-law.com

BY: _____
RUSSELL S. ADLER
Florida Bar No. 599298

9

IN THE CIRCUIT COURT FOR BROWARD COUNTY, FLORIDA

IN RE: ESTATE OF    PROBATE DIVISION   Filed in Open Court.
                   HOWARD C. FORMAN
VINCENZA PESCE    File No. 09-2878       CLERK

Deceased.      Division 61J      ON 6-16-09
                     BY

## ORDER APPOINTING PERSONAL REPRESENTATIVE

On the petition of ANGELA RUSCIO for administration of the estate of VINCENZA PESCE, deceased, the court finding that the decedent died on May 2, 2009 and that ANGELA RUSCIO is entitled to appointment as personal representative by reason of surviving daughter, it is

ADJUDGED that ANGELA RUSCIO is appointed personal representative of the estate of the decedent, and that upon taking the prescribed oath, filing designation of resident agent and acceptance, and entering into the bond in the sum of _____ NO _____, letters of administration shall be issued.

ORDERED this ____ day of 6/16/ , 2009.

_____
Circuit Judge

STATE OF FLORIDA
BROWARD COUNTY
I DO HEREBY CERTIFY the within and foregoing is a true
and correct copy of the original as it appears on record
and file in the office of the Circuit Court Clerk of Broward
County, Florida, and that same is in full force and effect.
WITNESS my hand and Official Seal at Fort Lauderdale,
Florida, this the ____ day of _____ 20__

_____
Deputy Clerk

Fax sent by : 9547768678     OCEAN HYPERBARIC     07-02-09 11:03    Pg: 12/35

IN THE CIRCUIT COURT FOR BROWARD COUNTY, FLORIDA

IN RE: ESTATE OF         PROBATE DIVISION

VINCENZA PESCE         File No. 09-2878
                 Division 61J
Deceased.

*(left margin, vertical text)* Upon entry to a safe deposit box, an inventory of the contents must be made in the presence of a bank employee witnessed, and filed with the court.

LETTERS OF ADMINISTRATION

(single personal representative)

TO ALL WHOM IT MAY CONCERN

Filed in Open Court.
HOWARD C. FORMAN
CLERK
ON 6-16-09
BY

WHEREAS, VINCENZA PESCE, resident of Italy, died May 2, 2009, owning assets in the State of Florida, and

WHEREAS, ANGELA RUSCIO has been appointed personal representative of the estate of the decedent and has performed all acts prerequisite to issuance of Letters of Administration in the estate,

NOW, THEREFORE, I, the undersigned circuit judge, declare ANGELA RUSCIO duly qualified under the laws of the State of Florida to act as personal representative of the estate of VINCENZA PESCE, deceased, with full power to administer the estate according to law; to ask, demand, sue for, recover and receive the property of the decedent; to pay the debts of the decedent as far as the assets of the estate will permit and the law directs; and to make distribution of the estate according to law.

ORDERED on 6/16/2009.

Circuit Judge

*(left margin, vertical text)* THIS ESTATE MUST BE CLOSED WITHIN 12 MONTHS IF NOT CONTESTED.

Bar Form No. P.3.0700
Copr. Florida Lawyers Support Services, Inc.
Reviewed October 1, 1999

STATE OF FLORIDA
BROWARD COUNTY
I DO HEREBY CERTIFY the within and foregoing is a true and correct copy of the original as it appears on record and file in the office of the Circuit Court Clerk of Broward County, Florida, and that same is in full force and effect.
WITNESS my hand and Official Seal at Fort Lauderdale, Florida, this the ___ day of _____ 20 __.

Deputy Clerk

# EXHIBIT B

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

**09**

CASE NO.

LUIGI MARTINISI, As Personal
Representative of the Estate of
FRANCESCO PIO MARTINISI,
deceased,

**09 03 6 7 3 6**

     Plaintiff,

vs.

OCEAN HYPERBARIC NEUROLOGIC
CENTER, INC., and OCEAN MEDICAL
CENTER, L.L.C.,

     Defendants.



_____/

## C O M P L A I N T

    COMES NOW, the Plaintiff, LUIGI MARTINISI, as Personal Representative of the

Estate of FRANCESCO PIO MARTINISI, by and through her undersigned counsel, and sues

the Defendant, OCEAN HYPERBARIC NEUROLOGIC CENTER, INC., and OCEAN

MEDICAL CENTER, L.L.C., as follows:

### GENERAL ALLEGATIONS AS TO ALL COUNTS

    1.  This is an action for damages that exceed Fifteen Thousand ($15,000.00) Dollars,
exclusive of interest and costs..

    2.  At all times material hereto, the Plaintiff, LUIGI MARTINISI, is the lawful Personal
Representative of the Estate of the deceased, FRANCESCO PIO MARTINISI (age 4 on the
date of death), and is a resident of Italy.  A copy of the Letters of Administration is attached
hereto as Exhibit "A."

    3.  This is an action for Wrongful Death that is brought pursuant to the Florida Wrongful
Death Act, as codified in Section 768.16 through 768.26, Florida Statutes.

4.    The survivors of **THE ESTATE OF FRANCESCO PIO MARTINISI**, as defined by Florida Wrongful Death Act, are:

        a)    Luigi Martinisi, Father, age 36
        b)    Caterina Ruscio, Mother, age 32

5.    At all times material hereto and at the time of the incident complained of, Defendant, **OCEAN MEDICAL CENTER, L.L.C.**, was a Florida Limited Liability Company doing business in Broward County, Florida, and was the owner that certain building located at 4001 North Ocean Drive, Lauderdale By the Sea, Broward County, Florida.

6.    At all times material hereto and at the time of the incident complained of, Defendant, **OCEAN HYPERBARIC NEUROLOGIC CENTER, INC.**, was a Florida Profit Corporation doing business at 4001 North Ocean Drive, Suite 105, Lauderdale By the Sea, Broward County, Florida.

7.    At all times material hereto and at the time of the incident complained of, Defendant **OCEAN HYPERBARIC NEUROLOGIC CENTER, INC.**, was in the business of providing hyperbaric oxygen treatments to its patients. Hyperbaric oxygen treatments involve the administration of pure oxygen while in a compressed pressurized environment, which is highly flammable and has explosive qualities that can cause violent fires and explosions. As such, Defendant **OCEAN HYPERBARIC NEUROLOGIC CENTER, INC.** was engaged in a ultrahazardous activity.

8.    At all times material hereto and at the time of the incident complained of, Defendant, **OCEAN MEDICAL CENTER, L.L.C.**, was fully aware that Defendant **OCEAN**

2

HYPERBARIC NEUROLOGIC CENTER, INC., was engaged in the aforedescribed ultrahazardous activity.

9.     On May 1, 2009, Plaintiff's decedent, FRANCESCO PIO MARTINISI was a business invitee who was lawfully in a hyperbaric chamber receiving a hyperbaric oxygen treatment on the premises of Defendant, OCEAN HYPERBARIC NEUROLOGIC CENTER, INC., in the building that was owned and operated by Defendant OCEAN MEDICAL CENTER, L.L.C.,.

10.    At the aforedescribed time, place and date, Plaintiffs decedent,  FRANCESCO PIO MARTINISI, was seriously and severely injured in an explosion and fire that occurred in said hyperbaric chamber. As a direct and proximate result of said explosion and fire, Plaintiffs' decedent was severely burned and ultimately died from said injuries on June 11, 2009.

### COUNT I
### NEGLIGENCE OF OCEAN HYPERBARIC NEUROLOGIC CENTER, INC

Plaintiff, LUIGI MARTINISI, realleges and reavers paragraph numbers 1 through 10, as though fully set forth herein and further states:

11.    The Defendant, OCEAN HYPERBARIC NEUROLOGIC CENTER, INC, by and through its agents and employees, owed a duty to the Plaintiff's decedent to maintain the aforedescribed premises in a reasonably safe condition, and to use reasonable care for his safety.

12.    At the aforedescribed place and date, the Defendant, OCEAN HYPERBARIC NEUROLOGIC CENTER, INC, by and through its agents and employees, did negligently and carelessly own, operate, maintain and control the aforesaid premises, including but not limited to the hyperbaric chamber, in a negligent and careless manner, in one or more of the following ways:

3

a)  by failing to take reasonable safety measures were taken to protect against explosion and/or fire in its hyperbaric oxygen chambers, although Defendant knew or in the exercise of reasonable care should have known that the administration of pure oxygen while a pressurized environment is highly explosive and dangerous

b)  by failing to adequately warn or instruct patients and other invitees in and around its hyperbaric oxygen chambers, including but not limited to Plaintiff's decedent, concerning safety practices and procedures designed to minimize or eliminate the risk of fire and/or explosion;

c)  by failing to adequately supervise the aforedescribed hyperbaric chambers, their occupants and the areas surrounding said chambers;

d)  by failing to properly inspect and maintain the hyperbaric chambers in the aforedescribed facility, and the areas surrounding the chambers, in order to insure that said chambers were working properly and to minimize the risk of ignition sources that could lead to explosion and/or fire in and around said chambers, thereby creating a dangerous and hazardous condition.

e)  by failing to provide adequate warnings and/or other reasonable notice of the aforedescribed unsafe, dangerous and hazardous condition to patrons, including but not limited to the Plaintiff's decedent, although Defendant knew, or in the exercise of reasonable care, should have known about the existence of said condition, and it further represented that its premises were safe and suitable when, in fact, it was not because of the hazardous condition.

13.   As a direct and proximate result of the aforementioned negligence on the part of Defendant, **OCEAN HYPERBARIC NEUROLOGIC CENTER, INC.**, Decedent, **FRANCESCO PIO MARTINISI**, sustained grievous injuries resulting in his death and the Plaintiff has sustained the following damages for the Estate and the survivors:

a.  loss of prospective net accumulations of the estate reduced to present value and loss of support and services pursuant to Florida Statutes 768 (past and present);

b.  medical and funeral expenses due to the Decedent's injuries and death;

4

c. the future loss of support and services of the Decedent, to his Parents, LUIGI MARTINISI and CATERINA RUSCIO, from the date of death and reduced to present value;

d. mental pain and suffering sustained by LUIGI MARTINISI and CATERINA RUSCIO as a result of their child's death.

WHEREFORE, the Plaintiff, LUIGI MARTINISI, as Personal Representative of the Estate of FRANCESCO PIO MARTINISI hereby demands judgment against the Defendant, OCEAN HYPERBARIC NEUROLOGIC CENTER, INC., in an amount in excess of FIFTEEN THOUSAND DOLLARS ($15,000.00), along with costs and interest where allowed by law.

## COUNT II
## NEGLIGENCE OF OCEAN MEDICAL CENTER, L.L.C.

Plaintiff, LUIGI MARTINISI, realleges and reavers paragraph numbers 1 through 10, as though fully set forth herein and further states:

14.     The Defendant,  OCEAN MEDICAL CENTER, LLC., by and through its agents and employees, had a non-delegable duty to invitees on its premises, including but not limited to Plaintiff's decedent,  to assure that its premises, including but not limited to the part of its premises occupied by OCEAN HYPERBARIC NEUROLOGIC CENTER, INC, were in reasonably safe condition, and to use reasonable care for their safety.

15.     At the aforedescribed place and date, Defendant OCEAN MEDICAL CENTER, LLC., by and through its agents and  employees, did negligently and carelessly own, operate, maintain and control its aforedescribed premises, including but not limited to the hyperbaric chambers at  OCEAN HYPERBARIC NEUROLOGIC CENTER, INC., in a negligent and careless manner, in one or more of the following ways:

a)      by failing to take reasonable safety measures were taken to protect against explosion and/or fire in its hyperbaric oxygen chambers,

5

although Defendant knew or in the exercise of reasonable care should have known that the administration of pure oxygen while a pressurized environment is highly explosive and dangerous

b)    by failing to adequately warn or instruct patients and other invitees in and around its hyperbaric oxygen chambers, including but not limited to Plaintiff's decedent, concerning safety practices and procedures designed to minimize or eliminate the risk of fire and/or explosion;

c)    by failing to adequately supervise the aforedescribed hyperbaric chambers, their occupants and the areas surrounding said chambers;

d)    by failing to properly inspect and maintain the hyperbaric chambers in the aforedescribed facility, and the areas surrounding the chambers, in order to insure that said chambers were working properly and to minimize the risk of ignition sources that could lead to explosion and/or fire in and around said chambers, thereby creating a dangerous and hazardous condition.

e)    by failing to provide adequate warnings and/or other reasonable notice of the aforedescribed unsafe, dangerous and hazardous condition to patrons, including but not limited to the Plaintiff's decedent, although Defendant knew, or in the exercise of reasonable care, should have known about the existence of said condition, and it further represented that its premises were safe and suitable when, in fact, it was not because of the hazardous condition.

16.    As a direct and proximate result of the aforementioned negligence on the part of Defendant, OCEAN MEDICAL CENTER, LLC., Plaintiff's Decedent, FRANCESCO PIO MARTINISI, sustained grievous injuries resulting in his death and the Plaintiff has sustained the following damages for the Estate and the survivors:

a.    loss of prospective net accumulations of the estate reduced to present value and loss of support and services pursuant to Florida Statutes 768 (past and present);

b.    medical and funeral expenses due to the Decedent's injuries and death;

c.    the future loss of support and services of the Decedent, to his Parents, LUIGI MARTINISI and CATERINA RUSCIO, from the date of death and reduced

6

to present value;

d. mental pain and suffering sustained by LUIGI MARTINISI and CATERINA RUSCIO as a result of their child's death.

WHEREFORE, the Plaintiff, LUIGI MARTINISI, as Personal Representative of the Estate of FRANCESCO PIO MARTINISI hereby demands judgment against the Defendant, OCEAN HYPERBARIC NEUROLOGIC CENTER, INC., in an amount in excess of FIFTEEN THOUSAND DOLLARS ($15,000.00), along with costs and interest where allowed by law.

## COUNT III
### STRICT LIABILITY OF
### OCEAN HYPERBARIC NEUROLOGIC CENTER, INC.

Plaintiff, FRANCESCO PIO MARTINISI, realleges and reavers paragraph numbers 1 through 10, as though fully set forth herein and further states:

17. By administering pure oxygen in a pressurized environment, Defendant, OCEAN HYPERBARIC NEUROLOGIC CENTER, INC, was engaged in a ultrahazardous activity for which it is strictly liable.

18. As a direct and proximate result of the aforedescribed ultrahazardous activities, Plaintiff's Decedent, FRANCESCO PIO MARTINISI, sustained grievous injuries resulting in his death and the Plaintiff has sustained the following damages for the Estate and the survivors:

   a. loss of prospective net accumulations of the estate reduced to present value and loss of support and services pursuant to Florida Statutes 768 (past and present);

   b. medical and funeral expenses due to the Decedent's injuries and death;

   c. the future loss of support and services of the Decedent, to his Parents, LUIGI MARTINISI and CATERINA RUSCIO, from the date of death and reduced to present value;

   d. mental pain and suffering sustained by LUIGI MARTINISI and CATERINA RUSCIO as a result of their child's death.

7

WHEREFORE, the Plaintiff, LUIGI MARTINISI, as Personal Representative of the Estate of FRANCESCO PIO MARTINISI hereby demands judgment against the Defendant, OCEAN HYPERBARIC NEUROLOGIC CENTER, INC., in an amount in excess of FIFTEEN THOUSAND DOLLARS ($15,000.00), along with costs and interest where allowed by law.

<div align="center">

### COUNT IV
### STRICT LIABILITY OF
### OCEAN MEDICAL CENTER, LLC

</div>

Plaintiff, LUIGI MARTINISI, realleges and reavers paragraph numbers 1 through 10, as though fully set forth herein and further states:

19.     OCEAN MEDICAL CENTER, LLC., is strictly liable for the aforedescribed ultrahazardous activity that was being conducted on its property.

20.     As a direct and proximate result of the aforedescribed ultrahazardous activities, Plaintiff's Decedent, FRANCESCO PIO MARTINISI, sustained grievous injuries resulting in his death and the Plaintiff has sustained the following damages for the Estate and the survivors:

   a. loss of prospective net accumulations of the estate reduced to present value and loss of support and services pursuant to Florida Statutes 768 (past and present);

   b. medical and funeral expenses due to the Decedent's injuries and death;

   c. the future loss of support and services of the Decedent, to his Parents, LUIGI MARTINISI and CATERINA RUSCIO, from the date of death and reduced to present value;

   d. mental pain and suffering sustained by LUIGI MARTINISI and CATERINA RUSCIO as a result of their child's death.

WHEREFORE, the Plaintiff, LUIGI MARTINISI, as Personal Representative of the Estate of FRANCESCO PIO MARTINISI hereby demands judgment against the Defendant,

<div align="center">8</div>

OCEAN MEDICAL CENTER LLC, in an amount in excess of FIFTEEN THOUSAND DOLLARS ($15,000.00), along with costs and interest where allowed by law.

## DEMAND FOR JURY TRIAL

The Plaintiff, LUIGI MARTINISI, as Personal Representative of the Estate of FRANCESCO PIO MARTINISI, demands a trial by jury of all issues triable by law.

DATED this 1st day of July, 2009.

ROTHSTEIN ROSENFELDT ADLER
Attorneys for Plaintiff
401 East Las Olas Blvd., Suite 1650
Fort Lauderdale, Florida 33301
Tel: (954) 522-3456; Fax: (954) 527-8663
radler@rra-law.com

BY:_____
RUSSELL S. ADLER
Florida Bar No. 599298

9

IN THE CIRCUIT COURT FOR BROWARD COUNTY, FLORIDA

IN RE: ESTATE OF         PROBATE DIVISION

FRANCESCO PIO MARTINISI    File No. *09-3d.8*
                     Division 61J

Deceased.

Filed in Open Court.
HOWARD C. FORMAN
CLERK
ON 6 25 09
BY

LETTERS OF ADMINISTRATION

(single personal representative)

TO ALL WHOM IT MAY CONCERN

WHEREAS, FRANCESCO PIO MARTINISI, resident of Italy, died June 11, 2009, owning assets in the State of Florida, and

WHEREAS, LUIGI MARTINISI has been appointed personal representative of the estate of the decedent and has performed all acts prerequisite to issuance of Letters of Administration in the estate,

NOW, THEREFORE, I, the undersigned circuit judge, declare LUIGI MARTINISI duly qualified under the laws of the State of Florida to act as personal representative of the estate of FRANCESCO PIO MARTINISI, deceased, with full power to administer the estate according to law; to ask, demand, sue for, recover and receive the property of the decedent; to pay the debts of the decedent as far as the assets of the estate will permit and the law directs; and to make distribution of the estate according to law.

ORDERED on 6 25, 2009.

_____
Circuit Judge

Bar Form No. P-5.0700
Copr.Florida Lawyers Support Services, Inc.
Revised October 1, 1990

Upon entry to a safe deposit box, an inventory of the contents must be made in the presence of a bank employee witnessed, and filed with the court.

**THIS ESTATE MUST BE CLOSED WITHIN 12 MONTHS IF NOT CONTESTED.**

STATE OF FLORIDA
BROWARD COUNTY
I DO HEREBY CERTIFY the within and foregoing is a true and correct copy of the original as it appears on record and file in the office of the Circuit Court Clerk of Broward County, Florida, and that same is in full force and effect.
WITNESS my hand and Official Seal at Fort Lauderdale, Florida, this the 25 day of _____ 20 A.D.
Howard C. Forman
Deputy Clerk

IN THE CIRCUIT COURT FOR BROWARD COUNTY, FLORIDA

IN RE: ESTATE OF                    PROBATE DIVISION

FRANCESCO PIO MARTINISI          File No. ___09-3641___
                                 Division 61J

Deceased

Filed in Open Court:
HOWARD C. FORMAN
                    CLERK

ON 6-25-09

BY _____

ORDER APPOINTING PERSONAL REPRESENTATIVE

On the petition of LUIGI MARTINISI for administration of the estate of FRANCESCO PIO MARTINISI, deceased, the court finding that the decedent died on June 11, 2009 and that LUIGI MARTINISI is entitled to appointment as personal representative by reason of surviving father, it is

ADJUDGED that LUIGI MARTINISI is appointed personal representative of the estate of the decedent, and that upon taking the prescribed oath, filing designation of resident agent and acceptance, and entering into the bond in the sum of _____ letters of administration shall be issued.

ORDERED this ___ day of ___6/25___, 2009.

_____
                Circuit Judge

STATE OF FLORIDA
BROWARD COUNTY
I DO HEREBY CERTIFY the within and foregoing is a true and correct copy of the original as it appears on record and file in the office of the Circuit Court Clerk of Broward County, Florida, and that same is in full force and effect.
WITNESS my hand and Official Seal at Fort Lauderdale, Florida, this the __25__ day of _____ 20__.
                                    Howard C. Forman
                    _____
                                    Deputy Clerk

# EXHIBIT C



Member Argo Group

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its President and Secretary as duly authorized representatives of the Company.

Dale Pilkington, President

Craig Comeaux, Secretary

**Colony Insurance Company**
**Colony Specialty Insurance Company**
**Colony National Insurance Company**
8720 Stony Point Parkway, Suite 300
Richmond, VA 23235

CIC 000001

## COMMON POLICY DECLARATIONS

# Colony Insurance Company
3720 Stony Point Parkway, Suite 300
Richmond, VA 23235

*Underwritten By Colony Management Services, Inc.*

POLICY NUMBER
GL3717238
RENEWAL OF
GL3620317
PDQ CODE
98K

**1. NAMED INSURED and MAILING ADDRESS:**
WINNIE I. NEUBAUER
D/B/A OCEAN MEDICAL CENTER, LLC
4001 NORTH OCEAN DRIVE
LAUDERDALE BY THE SEA      FL  33308

**PRODUCER:** 09011
Roehrig & MacDuff
1717 N Clyde Morris Blvd
Daytona Beach,                    FL  32117

**2. POLICY PERIOD:** From 10/30/2008 __ to 10/30/2009 __ 12:01 A.M. Standard Time at your Mailing Address above.
IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE
AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

**3. THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.  THIS
PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**

| COVERAGE PARTS | | PREMIUM |
|---|---|---|
| Commercial General Liability | | $  9,694.00 |
| Liquor Liability | | $ NOT COVERED |
| Commercial Property | | $ NOT COVERED |
| Commercial Crime | | $ NOT COVERED |
| Commercial Inland Marine | | $ NOT COVERED |
| Commercial Farm and Ranch | | $ NOT COVERED |
| Owners And Contractors Protective | | $ NOT COVERED |
| Coverage for Certified Acts of Terrorism Rejected; Exclusion Attached. (Per Policyholder Disclosure TRIA2002Notice attached.) | | $ NOT COVERED |
| | TOTAL | $  9,694.00 |

Florida Hurricane CAT Fund Assessment

I hereby certify this to be a true and correct copy.

*Carolyn Ford*

Carolyn Ford-Data/Entry Supervisor

| | |
|---|---|
| | $ 98.79 |
| SURPLUS LINES TAX | $ 493.95 |
| SERVICE FEE | $ 9.88 |
| POLICY FEE | $ 35.00 |
| INSPECTION FEE | $ 150.00 |
| | $ |
| | $ |
| | $ |
| | $ |

Premium shown is payable at inception.

Total Policy Premium: $   10,481.62

**4.  FORMS APPLICABLE TO ALL COVERAGE PARTS:**

See Schedule of Forms and Endorsements - U001

**5.  BUSINESS DESCRIPTION:** MEDICAL OFFICE BUILDING

Countersigned: 10/30/08
                      Date

By: _____

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
Copyright, Insurance Services Office, Inc., 1984.

DCJ6550 (07/05)

NOTARY PUBLIC

6-30-2012

My Commission Expires

WINNIE I. NEUBAUER
Insured: D/B/A OCEAN MEDICAL CENTER, LLC

Policy Number: GL3717238

# SCHEDULE OF FORMS AND ENDORSEMENTS

Forms and Endorsements applying to and made part of this policy at the time of issuance:

| NUMBER | TITLE |
|--------|-------|
| **FORMS APPLICABLE - POLICY COMMON FORMS** | |
| PUCG (04-08) | COMMON POLICY JACKET |
| DCC655C (07-08) | COMMON POLICY DECLARATIONS |
| JC01 (10-04) | SCHEDULE OF FORMS AND ENDORSEMENTS |
| U0002 (09-04) | MINIMUM POLICY PREMIUM |
| U0034 (07-02) | SERVICE OF SUIT |
| U170 (12-05) | ACTUAL CASH VALUE |
| UCG2175 (01-08) | EXCL-CERT. ACTS OF TERRORISM AND OTHER ACTS OF TERRORISM |
| IL0017 (11-98) | COMMON POLICY CONDITIONS |
| IL0021 (04-98) | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT |
| **FORMS APPLICABLE - COMMERCIAL GENERAL LIABILITY** | |
| CCJ6553 (07-02) | COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS |
| U003 (07-02) | HAZARDOUS MATERIALS EXCLUSION |
| U004 (07-07) | MISCELLANEOUS EXCLUSIONS ENDORSEMENT |
| U016 (07-02) | ATHLETIC OR SPORT PARTICIPANTS EXCLUSION |
| U046 (09-04) | LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT |
| U043 (09-04) | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| U070 (03-08) | DEDUCTIBLE LIABILITY INSURANCE |
| U087 (07-02) | TOTAL LIQUOR LIABILITY EXCLUSION |
| U132A (07-03) | HIRED AUTO AND NON-OWNED AUTO LIABILITY |
| U153 (07-02) | LIMITATION OF COVERAGE TO BUSINESS DESCRIPTION |
| CG0001 (12-04) | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| CG0067 (03-05) | EXCLUSION - VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX |
| CG2167 (12-04) | FUNGI OR BACTERIA EXCLUSION |
| CG2244 (07-98) | EXCLUSION - SERVICES FURNISHED BY HEALTH CARE PROVIDERS |
| **FORMS APPLICABLE - STATE SPECIFIC** | |
| UILC255 (07-02) | FLORIDA CHANGES - CANCELLATION AND NONRENEWAL |

Important notice: See the actual policy forms attached for the full title, terms and conditions.

U001 (10/04)

Company

Page 1 of 1

CIC 000003

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MINIMUM POLICY PREMIUM

The following additional policy Conditions supercede any other policy conditions as regards the "minimum earned premium" for this policy:

**Minimum Earned Premium**

This policy is subject to a "minimum earned premium". "Minimum earned premium" means the premium that is calculated as follows:

1. The total policy premium as shown in the policy Declarations, plus
2. Any premium adjustment by endorsements  plus
3. Any additional premium developed by audit.

**Audits and Minimum Earned Premium**

Audits will not reduce the "minimum earned premium". The due date for audit premiums is the date shown as the due date on the bill.

**Cancellation and Minimum Earned Premium**

1. If you cancel this policy, the return premium will be 90% of the pro rata balance of any remaining unearned premium but no less than _25_ % of the "minimum earned premium".
2. If we cancel the policy for any reason, other than for non-payment of premium, the "minimum earned premium" shall not apply. We will return to you the pro rata amount of the unearned premium.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U002-0904

Page 1 of 1

Company

CIC 000004

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SERVICE OF SUIT

Service of process may be made upon the Company to:

Claims Manager
  Colony Insurance Company,
  Colony National Insurance Company, or
  Colony Specialty Insurance Company
8720 Stony Point Parkway, Suite 300
Richmond, Virginia 23235

Where required by statute, regulation or other regulatory directive, the Company appoints the Commissioner of Insurance, or other designee specified for that purpose, as its attorney for acceptance of service of all legal process in the state in any action or proceeding arising out of this insurance.

The Commissioner or other designee is requested to forward process to the Company as shown above, or if required in his/her particular state, to a designated resident agent for service of process.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U094-0702

Page 1 of 1

CIC 000005

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ACTUAL CASH VALUE DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY
COMMERCIAL INLAND MARINE COVERAGE PART
CRIME COVERAGE PART
FARM PROPERTY COVERAGE FORM

If Actual Cash Value applies, the following definition is added:

Unless otherwise mandated by statute, actual cash value is the lesser of the following:

    a. Actual cash value is calculated as the amount it would cost to repair or replace Covered Property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence. Actual cash value applies to valuation of Covered Property regardless of whether that property has sustained partial damage or total loss damage;

    b. When the loss or damage to Covered Property creates a total loss, actual cash value means the market value of property in a used condition equal to that of the destroyed Covered Property, if reasonably available on the used market;

    c. Otherwise, actual cash value means the market value of new, identical or nearly identical property less reasonable deduction for wear and tear, deterioration, and obsolescence.

The actual cash value of the lost or damaged property may be significantly less than its replacement cost.

This endorsement does not affect coverage if Replacement Cost valuation applies.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

CIC 000006

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CERTIFIED ACTS OF TERRORISM AND OTHER ACTS OF TERRORISM EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

A. The following exclusion is added:

**TERRORISM AND PUNITIVE DAMAGES**

This insurance does not apply to "any injury or damage" arising out of or resulting, directly or indirectly, from:

**(1)** "Certified acts of terrorism" or "other acts of terrorism", including any action taken in hindering or defending against an actual or expected incident of "certified acts of terrorism" or "other acts of terrorism"; or

**(2)** Any act of terrorism:

**(a)** that involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**(b)** that is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**(c)** in which pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials;

regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage in **(1)** or **(2)** above; including

**(3)** Damages arising out of or resulting, directly or indirectly, from **(1)** or **(2)** above that are awarded as punitive damages.

B. In the event of an act of terrorism, a "certified act of terrorism" or an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

C. The following definitions are added to the **DEFINITIONS** Section:

For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to any damage, "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian

UCG2175-0108     Includes copyrighted material of ISO Properties, Inc., 2002     Page 1 of 2
with its permission.
CIC 000007

population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

"Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002. Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

UCG2175-0108      Includes copyrighted material of ISO Properties, Inc., 2002
with its permission.                    Page 2 of 2

CIC 000008

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**CIC 000009**

Copyright, Insurance Services Office, Inc., 1998

INTERLINE
IL 00 21 04 98

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "Special nuclear material" or "by-product material".

**CIC 000010**

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

' Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

CIC 000011

# COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS

This Coverage Part consists of this Declarations Form, the Common Policy Conditions, the Commercial General Liability Form and the Endorsements indicated as applicable. (See "COMMON POLICY DECLARATIONS" for items 1 and 2)

POLICY NO. GL 3717238

NAMED INSURED  WINNIE I. NEUBAUER
            D/B/A OCEAN MEDICAL CENTER, LLC

## 3. LIMITS OF INSURANCE

| | | |
|---|---|---|
| General Aggregate Limit (Other Than Products - Completed Operations) | $2,000,000 | |
| Products Completed Operations Aggregate Limit | $ EXCLUDED | |
| Personal & Advertising Injury Limit | $1,000,000 | |
| Each Occurrence Limit | $1,000,000 | |
| Damage To Premises Rented To You Limit | $  100,000 | Any One Premises |
| Medical Expense Limit | $    5,000 | Any One Person |

**RETROACTIVE DATE** (CG 00 02 only) - Coverage A of this insurance does not apply to "bodily injury" or "property damage" which occurs before the Retroactive Date, if any, shown below.

Retroactive Date:  NONE          (Enter Date or "None" if no Retroactive Date applies.)

Location of All Premises You Own, Rent or Occupy (Same as Item 1 unless shown below).
SAME

| CLASSIFICATION | CODE NO. | PREMIUM BASIS | | RATE | ADVANCE PREMIUM | |
|---|---|---|---|---|---|---|
| | | | | | PR / CO | ALL OTHER |
| MEDICAL OFFICES | 66561 | A | 21000 | 444.94 EXCL | EXCLUDED | 9344 |
| NON OWNED AUTO | 99999 | O | 1 | FLAT EXCL | EXCLUDED | 350.00 |

| 4. FORMS / ENDORSEMENTS APPLICABLE: | TOTAL PREMIUM FOR THIS COVERAGE PART | |
|---|---|---|
| SEE SCHEDULE OF FORMS AND ENDORSEMENTS - FORM U001 | | $  9,694.00 |

5. **FORM OF BUSINESS:** [ ] Individual   [ ] Joint Venture   [ ] Partnership   [X] Organization (Other than Partnership or Joint Venture)   [ ] Corporation

Audit Period:  Annual unless otherwise stated:

DCU8553 (07-02)            Includes Copyright material of Insurance Services Office, Inc. with its permission.
                              Copyright, Insurance Services Office, Inc., 1984
                                              Company

CIC 000012

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# HAZARDOUS MATERIALS EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.  **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, f. and SECTION I – COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions, n. and m.** are replaced by the following:

This insurance does not apply to:

**Hazardous Materials**

(1) "Bodily injury", "property damage" or "personal and advertising injury" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "hazardous materials" at any time.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "hazardous materials"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "hazardous materials".

(3) Any obligations to share damages with or indemnify another party whom must pay damages because of injury or damage relating to "hazardous materials".

(4) Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with paragraphs (1), (2), or (3) above.

This exclusion applies whether or not such "hazardous material(s)" has any function in your business, operations, premises, site or location.

B.  **SECTION V – DEFINITIONS** is amended and the following added:

"Hazardous materials" means "pollutants", lead, asbestos, silica and materials containing them.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U003-0702          Includes copyrighted material of Insurance Services Office, Inc.,          Page 1 of 1
with its permission.

CIC 000013

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# MISCELLANEOUS EXCLUSIONS ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** is amended and the following is added:

### EXCLUSION - INTERCOMPANY PRODUCTS SUITS

This insurance does not apply to any claim for damages by any Named Insured against another Named Insured because of "bodily injury" or "property damage" arising out of or resulting from 'your products" and included within the "products-completed operations hazard".

B. **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY,  2. Exclusions** and **COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions** are amended and the following are added:

### USL&H, JONES ACT and MARITIME EXCLUSION

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of or resulting from:

(1)  operations over navigable waters or offshore including but not limited to drilling and production platforms, pipelines, and vessels; or

(2)  direct or indirect actions including but not limited to subrogation involving U.S. Longshore & Harbor Workers Compensation Act (USL&H), Merchant Marine Act ("Jones Act") or other maritime laws and any amendments to those laws.

### EXCLUSION - PROFESSIONAL SERVICES

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of or resulting from the rendering or failure to render any "professional service" except by endorsement to this policy and then only to the extent of such endorsement.

"Professional service" means:

(1)  Legal, accounting or advertising services;

(2)  Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

(3)  Engineering services, including related supervisory or inspection services;

(4)  Medical, surgical, dental, x-ray or nursing services, treatment, advice or instruction;

(5)  Any health or therapeutic service, treatment, advice or instruction;

(6)  Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement, or personal grooming;

(7)  Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

(8)  Body piercing or tattooing services including but not limited to the insertion of pigment, collagen or any other foreign substance into or under the skin;

(9)  Services in the practice of pharmacy;

(10)  Law enforcement or firefighting services; and

(11)  Handling, embalming, disposal, burial, cremation or disinterment of dead bodies.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

CIC 000014

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ATHLETIC OR SPORT PARTICIPANTS EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** is amended and the following added:

**Athletic or Sport Participants**

This insurance does not apply to "bodily injury" to any person arising out of or resulting from practicing for or participating in any athletic contest, exhibition  activity, game or sport.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

CIC 000015

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

---

**SCHEDULE OF PREMISES OR PROJECTS:**

4001 NORTH OCEAN DRIVE LAUDERDALE-BY-THE-SEA FL 33308

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

---

This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of or resulting from:

(1) The ownership, maintenance or use of the premises shown in the Schedule; or

(2) The project shown in the Schedule.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U046-0904        Includes copyrighted material of Insurance Services Office, inc.,        Page 1 of 1
with its permission.

Company

CIC 000016

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A. SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY. 2. Exclusions** and **SECTION I – COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions** are amended and the following added:

This insurance does not apply to:

**Employment-Related Practices**

"Bodily injury" or "personal and advertising injury" to:

   **(1)** A person arising out of any:
      **(a)** Refusal to employ that person;
      **(b)** Termination of that person's employment; or
      **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, assault, battery, discrimination or abuse including sexual abuse directed at any person; or

   **(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" or "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

   **(1)** Whether the insured may be liable as an employer or in any other capacity; and

   **(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U048-0904          Includes copyrighted material of ISO Properties, Inc.,          Page 1 of 1
                             with its permission.

                                                                              CIC 000017

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

## SCHEDULE

| Coverage | Amount and Basis of Deductible | | |
| --- | --- | --- | --- |
|  | PER CLAIM | or | PER OCCURRENCE |
| Bodily Injury Liability OR | $500 | | $ NOT APPLICABLE |
| Property Damage Liability OR | $500 | | $ NOT APPLICABLE |
| Bodily Injury Liability and/or Property Damage Liability Combined | $ NOT APPLICABLE | | $ NOT APPLICABLE |

A. Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

B. You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

1. **PER CLAIM BASIS.** If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

   a. Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

   b. Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage";

   c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

      (1) "Bodily injury";

      (2) "Property damage"; or

      (3) "Bodily injury" and "property damage" combined; or

   d. Under Supplementary Payments-Coverage A and B, to all amounts we pay in the defense and investigation of any claim or "suit" to which this insurance applies

   as the result of any one "occurrence".

   If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

   With respect to "property damage", person includes an organization.

2. **PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

Includes copyrighted material of ISO Properties, Inc., with its permission.
Company

CIC 000018

   a. Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

   b. Under Property Damage Liability Coverage, to all damages because of "property damage";

   c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

     (1) "Bodily injury";

     (2) "Property damage"; or

     (3) "Bodily injury" and "property damage" combined; or

   d. Under Supplementary Payments-Coverage A and B, to all amounts we pay in the defense and investigation of any claim or "suit" to which this insurance applies

   as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

C. The terms of this insurance, including those with respect to:

   1. Our right and duty to defend the insured against any "suits" seeking those damages; and

   2. Your duties in the event of an "occurrence", claim, or "suit"

   apply irrespective of the application of the deductible amount.

D. We, at our sole election and option, may either:

   1. Pay any part of or all of the deductible amount to effect settlement of any claim or suit, and upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us; or

   2. Simultaneously upon receipt of notice of any claim or at any time thereafter, request you pay or deposit with us all or any part of the deductible amount, to be held and applied by us as herein provided.

     ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

CIC 000019

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TOTAL LIQUOR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, c.** is deleted and replaced with the following:

This insurance does not apply to:

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

CIC 000020

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# HIRED AUTO AND NON-OWNED AUTO LIABILITY

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE FORM

### SCHEDULE

| Coverage | Limits of Insurance | | Additional Premium | |
|---|---|---|---|---|
| Hired Auto Liability | $ | Each Occurrence Limit | $ | |
| Non-Owned Auto Liability | $1,000,000 | Each Occurrence Limit | $ | 350 |
| | $1,000,000 | Aggregate Limit | | |

A. Insurance is provided only for those coverages for which a specific premium charge is shown in the Declarations or in this Schedule.

  1. **HIRED AUTO LIABILITY**

    The insurance provided under the Commercial General Liability Form, SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, applies to "bodily injury" or "property damage" arising out of the maintenance or use of a "hired auto" by you or your "employees" in the course of your business.

  2. **NON-OWNED AUTO LIABILITY**

    The insurance provided under the Commercial General Liability Form, SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, applies to "bodily injury" or "property damage" arising out of the use of any "non-owned auto" in your business by any person other than you.

B. For insurance provided by this endorsement only:

  1. The exclusions, under the Commercial General Liability Form, SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, e. and j. are deleted and replaced by the following:

    e. "Bodily injury" to:

      (1) An "employee" of the insured arising out of and in the course of:

        (a) Employment by the insured; or

        (b) Performing duties related to the conduct of the insured's business; or

      (2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

    This exclusion applies:

    (1) Whether the insured may be liable as an employer or in any other capacity; and

    (2) To any obligation to share damages with or repay someone else who must pay damages because of injury.

    This exclusion does not apply to:

    (1) Liability assumed by the insured under an "insured contract"; or

    (2) "Bodily injury" arising out of and in the course of domestic employment by the insured unless benefits for such injury are in whole or in part either payable or required to be provided under any workers compensation law.

U132A-0703      Material Copyright, Insurance Services Office, Inc., 1996      Page 1 of 3

Company

CIC 000021

    **j.** "Property damage" to:

        (1) Property owned or being transported by, or rented or loaned to the insured; or

        (2) Property in the care, custody or control of the insured,

**2. SECTION II - WHO IS AN INSURED** in the Commercial General Liability Form, is replaced by the following:

Each of the following is an insured under this endorsement to the extent set forth below:

  **a.** You;

  **b.** Any other person using a "hired auto" with your permission;

  **c.** For a "non-owned auto", any partner or "executive officer" of yours, but only while such "non-owned auto" is being used in your business; and

  **d.** Any other person or organization, but only for their liability because of acts or omissions of an insured under a., b. or c. above.

  None of the following is an insured:

    (1) Any person engaged in the business of his or her employer for "bodily injury" to any co-"employee" of such person injured in the course of employment, or to the spouse, child, parent, brother or sister of that co-"employee" as a consequence of such "bodily injury", or for any obligation to share damages with or repay someone else who must pay damages because of the injury;

    (2) Any partner or "executive officer" for any "auto" owned by such partner or officer or a member of his or her household;

    (3) Any person while employed in or otherwise engaged in duties in connection with an "auto business", other than an "auto business" you operate;

    (4) The owner or lessee (of whom you are a sublessee) of a "hired auto" or the owner of a "non-owned auto" or any agent or "employee" of any such owner or lessee;

    (5) Any person or organization for the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

**C. SECTION III - LIMITS OF INSURANCE** is amended and the following added:

Regardless of the number of "hired autos", "non-owned autos", insureds, premiums paid, claims made or vehicles involved in the "occurrence", the most we will pay for all damages resulting from any one "occurrence" is the applicable limit shown in the Schedule of this endorsement or in the Declarations.

The Aggregate Limit is the most, subject to the Each Occurrence Limit, we will pay as damages for "bodily injury" or "property damage" sustained and expenses incurred in the defense and adjustment of all claims and "suits" regardless of how many persons assert claims or "suits" against you.

The Each Occurrence and Aggregate Limits described above are the most we will pay regardless of the number of insureds. These Limits of Insurance are subject to and not in addition to the General Aggregate Limit shown in the Declarations of the policy. Payments under these Limits of Insurance are part of and erode the policy General Aggregate Limit of Insurance shown in the Declarations.

**D.** The following additional definitions apply:

  **1.** "Auto Business" means the business or occupation of selling, repairing, servicing, storing or parking "autos".

  **2.** "Hired Auto" means any "auto" you lease, hire or borrow. This does not include any "auto" you lease, hire or borrow from any of your "employees" or members of their households, or from any partner or "executive officer" of yours.

CIC 000022

3. "Non-Owned Auto" means any "auto" you do not own, lease, hire or borrow which is used in connection with your business. However, if you are a partnership, a "non-owned auto" does not include any "auto" owned by any partner.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

CIC 000023

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# LIMITATION OF COVERAGE
# TO
# BUSINESS DESCRIPTION

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE
BUSINESS DESCRIPTION: MEDICAL OFFICE BUILDING

A  SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 1. Insuring Agreement, b.  is amended and the following added:

   (4) The "bodily injury" or "property damage" is caused by or results from the business described in the Schedule.

B  SECTION I - COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 1. Insuring Agreement, b. is amended and the following added:

   This insurance applies to "personal and advertising injury" caused by an offense in the course of the business described in the Schedule.

   ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U159-0702                                                        Page 1 of 1

Company

CIC 000024

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

    **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

  No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

  **b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

    **(3)** Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

  **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

  **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

CIC 000025

 © ISO Properties, Inc., 2003

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

    **(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

    **(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

    **(a)** Employment by the insured; or

    **(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

CIC 000026

 © ISO Properties, Inc., 2003 CG 00 01 12 04 □

## f. Pollution

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

CIC 000027

© ISO Properties, Inc., 2003

(2) Any loss, cost or expense arising out of any:

    (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    (b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

### g. Aircraft, Auto Or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

    (a) Less than 26 feet long; and

    (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

    (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

    (b) the operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

### h. Mobile Equipment

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

### i. War

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

### j. Damage To Property

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

CIC 000028

© ISO Properties, Inc., 2003 CG 00 01 12 04 □

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a side-track agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**CIC 000029**

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

## 2. Exclusions

This insurance does not apply to:

### a. Knowing Violation Of Rights Of Another

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

### b. Material Published With Knowledge Of Falsity

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

### c. Material Published Prior To Policy Period

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

### d. Criminal Acts

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

### e. Contractual Liability

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

### f. Breach Of Contract

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

### g. Quality Or Performance Of Goods – Failure To Conform To Statements

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

### h. Wrong Description Of Prices

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

### i. Infringement Of Copyright, Patent, Trademark Or Trade Secret

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

### j. Insureds In Media And Internet Type Businesses

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of websites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

### k. Electronic Chatrooms Or Bulletin Boards

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

### l. Unauthorized Use Of Another's Name Or Product

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**CIC 000030**

© ISO Properties, Inc., 2003   □

### m. Pollution

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

### n. Pollution-Related

Any loss, cost or expense arising out of any:

(1) Request, demand order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

### o. War

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## COVERAGE C MEDICAL PAYMENTS

### 1. Insuring Agreement

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions

We will not pay expenses for "bodily injury":

#### a. Any Insured

To any insured, except "volunteer workers".

#### b. Hired Person

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

#### c. Injury On Normally Occupied Premises

To a person injured on that part of premises you own or rent that the person normally occupies.

#### d. Workers Compensation And Similar Laws

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

#### e. Athletics Activities

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

#### f. Products-Completed Operations Hazard

Included within the "products-completed operations hazard".

#### g. Coverage A Exclusions

Excluded under Coverage A.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**CIC 000031**

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

CIC 000032

© ISO Properties, Inc., 2003     CG 00 01 12 04

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**CIC 000033**

2. The General Aggregate Limit is the most we will pay for the sum of:

  a. Medical expenses under Coverage C;

  b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

  c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

  a. Damages under Coverage A; and

  b. Medical expenses under Coverage C

  because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

  Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

  a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

    (1) How, when and where the "occurrence" or offense took place;

    (2) The names and addresses of any injured persons and witnesses; and

    (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

  b. If a claim is made or "suit" is brought against any insured, you must:

    (1) Immediately record the specifics of the claim or "suit" and the date received; and

    (2) Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

  c. You and any other involved insured must:

    (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

    (2) Authorize us to obtain records and other information;

    (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

    (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

  d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

  No person or organization has a right under this Coverage Part:

  a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**CIC 000034**

© ISO Properties, Inc., 2003

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

### 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

#### a. Primary Insurance

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

#### b. Excess Insurance

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

#### c. Method Of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

### 5. Premium Audit

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**CIC 000035**

## 6. Representations

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

## 7. Separation Of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

## 8. Transfer Of Rights Of Recovery Against Others To Us

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

## 9. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

c. All other parts of the world if the injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in a. above;

(2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

(3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

CIC 000036

© ISO Properties, Inc., 2003 CG 00 01 12 04

b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

CIC 000037

© ISO Properties, Inc., 2003

(1) Equipment designed primarily for:

    (a) Snow removal;

    (b) Road maintenance, but not construction or resurfacing; or

    (c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment;

    b. Malicious prosecution;

    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

    f. The use of another's advertising idea in your "advertisement"; or

    g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

    a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

      (1) Products that are still in your physical possession; or

      (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

        (a) When all of the work called for in your contract has been completed.

        (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

        (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

        Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    b. Does not include "bodily injury" or "property damage" arising out of:

      (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

      (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

      (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**CIC 000038**

© ISO Properties, Inc., 2003

CG 00 01 12 04

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(2) The providing of or failure to provide warnings or instructions.

CIC 000039

 © ISO Properties, Inc., 2003

COMMERCIAL GENERAL LIABILITY
CG 00 67 03 05

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2.**, **Exclusions** of Section I – Coverage A – Bodily Injury And Property Damage Liability:

**2. Exclusions**

This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**B.** The following exclusion is added to Paragraph **2.**, **Exclusions** of Section I – Coverage B – Personal And Advertising Injury Liability:

**2. Exclusions**

This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

CIC 000040

© ISO Properties, Inc., 2004                   □

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

CIC 000041

© ISO Properties, Inc., 2003

COMMERCIAL GENERAL LIABILITY
CG 22 44 07 98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - SERVICES FURNISHED BY HEALTH CARE PROVIDERS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

---

**Description of Operations:**
    MEDICAL OFFICE BUILDING

---

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to Paragraph 2., **Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability** and Paragraph 2., **Exclusions of Section I – Coverage B - Personal And Advertising Injury Liability**:

With respect to any operation shown in the Schedule, this insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

1.  The rendering or failure to render:

    a.  Medical, surgical, dental, x-ray or nursing service, treatment, advice or instruction, or the related furnishing of food or beverages;

    b.  Any health or therapeutic service, treatment, advice or instruction; or

    c.  Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming.

2.  The furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances; or

3.  The handling or treatment of dead bodies, including autopsies, organ donation or other procedures.

Copyright, Insurance Services Office, Inc., 1997

Company

CIC 000042

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# FLORIDA CHANGES –
# CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

OUTPUT POLICY COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EXCESS LIABILITY POLICY
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

A.  Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

   **2. Cancellation For Policies In Effect 90 Days Or Less**

   a.  If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, at least:

   (1)  10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   (2)  20 days before the effective date of cancellation if we cancel for any other reason.

B.  The following is added to the **Cancellation** Common Policy Condition:

   **7. Cancellation For Policies In Effect For More Than 90 Days**

   C.  a. If this policy has been in effect for more than 90 days, we will mail or deliver to the first Named Insured written notice of cancellation, at least:

   (1)  10 days before the effective date of cancellation if cancellation is for nonpayment of premium; or

   (2)  45 days before the effective date of cancellation for any other reason.

C.  The following is added:

   **NONRENEWAL**

   1.  If we decide not to renew this policy we will mail or deliver to the first Named Insured written notice of nonrenewal at least 45 days prior to the expiration of the policy.

   2.  Any notice of nonrenewal will be mailed or delivered to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

   ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

CIC 000043

JS 44 (Rev. 11/05)

**09-61379**

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE:** Attorneys MUST Indicate All Re-filed Cases Below.

## I. (a) PLAINTIFF

COLONY INSURANCE COMPANY

## DEFENDANTS

WINNIE I. NEUBAUER; OCEAN MEDICAL CENTER, LLC, a Florida Limited Liability Company; OCEAN HYPERBARIC NEUROLOGIC CENTER, INC., a Florida Corporation; ANGELA RUSCIO, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF VINCENZA PESCE; ANDERIGI MARTINISI, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF FRANCESCO RIO MARTINISI,

**(b)** County of Residence of First Listed Plaintiff  Richmond
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  Broward
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Joshua D. Lerner, Esq.
Rumberger, Kirk & Caldwell, P.A.
80 SW 8th Street, Suite 3000
Miami, Florida 33130
Tel. 305-358-5577

Attorneys (If Known)

CIV-COOKE

MAGISTRATE
BANDSTRA

**(d)** Check County Where Action Arose: ☐ MIAMI-DADE ☐ MONROE ☒ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ HIGHLANDS
OKEECHOBEE

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government
Plaintiff

☐ 3 Federal Question
(U.S. Government Not a Party)

☒ 4 Diversity
(Indicate Citizenship of Parties in Item III)

☐ 2 U.S. Government
Defendant

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☒4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☒5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 640 R.R. & Truck | ☐ 830 Patent | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 660 Occupational Safety/Health | | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | B☐ 510 Motions to Vacate Sentence | ☐ 720 Labor/Mgmt. Relations | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | B☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | A☐ 535 Death Penalty | | ☐ 871 IRS –Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities- Employment | B☐ 540 Mandamus & Other | ☐ 740 Railway Labor Act | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities- Other | B☐ 550 Civil Rights | ☐ 790 Other Labor Litigation | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | B☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act | | |

## V. ORIGIN (Place an "X" in One Box Only)

☐ 1 Original Proceeding
☐ 2 Removed from State Court
☒ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).

(See instructions second page)

a) Re-filed Case ☒ YES ☐ NO
JUDGE ZLOCH/ROSENBAUM

b) Related Cases ☐ YES ☒ NO
DOCKET NUMBER 09-CV-61126

## VII. CAUSE OF ACTION

(Cite the U.S. Civil statute under which you are filing and Write Brief Statement of Cause. (Do not cite jurisdictional statutes unless diversity.) 28 U.S.C. § 2201. Declaratory judgment regarding insurance coverage.

LENGTH OF TRIAL via 4 days estimated (for both sides to try entire case)

$ 350.00  1007655

09/01/09

| VIII. REQUESTED IN complaint: | ☐ CHECK IF THIS IS A CLASS ACTION | DEMAND $ | Check YES only if demanded in |
|---|---|---|---|
| **COMPLAINT:** | UNDER F.R.C.P. 23 | **JURY DEMAND:** ☐ YES ☒ NO | |

| ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE | SIGNATURE OF ATTORNEY OF RECORD | DATE 9/1/09 |
|---|---|---|

FOR OFFICE USE ONLY

AMOUNT _____     RECEIPT # _____     IFP _____